IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TERRIAL HARRIS,

          Petitioner,

v.                                Criminal Action No. 3:07cr419

UNITED STATES OF AMERICA,

          Respondent.

**MEMORANDUM OPINION**

Terrial Harris ("Harris" or "petitioner") filed a motion pursuant to Title 28, United States Code, Section 2255, attacking his 2008 convictions and sentences on Counts One and Three of the Indictment, Conspiracy to Possess with the Intent to Distribute more than Fifty Grams of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). The government has responded, the petitioner filed a reply, there was additional briefing by both sides,[1] and this matter is ripe.[2]

---

[1] On December 8, 2009, the Court received a "letter-motion" from Harris asking that the Court accept it "in lieu of a more formal brief," and asking that the Court enter a final order granting Harris the relief he seeks based on what Harris describes as "the government's failure to file their response in a timely manner." The Court has reviewed the record and finds that the government sought one extension of time, for thirty days, which the Court granted. The government then responded within the time period set by the Court – by August 10, 2009. With regard to the Court's subsequent order directing the government to respond to another pleading filed by Harris within forty-five days, the government did in fact respond within that time period. Accordingly, the "letter-motion" will be filed so that it will be a part of the record, but the defendant's requested relief will be denied.

[2] The Court finds that the record as made conclusively shows that petitioner is not entitled to relief under Section 2255. Petitioner is therefore not entitled to a hearing on the motion. *See Hodges v. United States*, 368 U.S. 139 (1961).

Procedural History

On August 28, 2007, a federal search warrant was executed at Harris's residence at 2213 Ruffin Road, Apartment E, in Richmond, Virginia. Harris was present at the time the warrant was executed. He was arrested pursuant to a criminal complaint that charged him with possession with the intent to distribute in excess of five grams of cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1). Harris waived his *Miranda* rights and stated that the crack was his. Robert J. Wagner of the Office of the Federal Public Defender was appointed as counsel for Harris. A detention and preliminary hearing was held on September 5, 2007. United States Magistrate Judge M. Hannah Lauck found probable cause and ordered Harris detained pending trial. On November 6, 2007, the grand jury returned an indictment charging Harris with three counts. Count One charged Conspiracy to Possess with the Intent to Distribute more than Fifty Grams of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 846; Count Two charged Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A); and Count Three charged Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). Shortly thereafter, on November 28, 2007, Wagner moved to withdraw as counsel, having learned that another attorney in the Office of the Federal Public Defender represented an individual whose interests conflicted with Harris's interests. The Court granted the motion on November 29, 2007, and William J. Dinkin was appointed as Harris's new counsel. On December 4, 2007, Harris was arraigned. On January 28, 2008, pursuant to a written plea agreement and written statement of facts, Harris entered a guilty plea as to Counts One and Three, and sentencing was scheduled for April 30, 2008. Harris was sentenced on April 30, 2008 to 140 months on Count One and 120 months on Count Three, to be served concurrently. This motion pursuant to Title 28, United States

Code, Section 2255 was executed by Harris on April 23, 2009. The Section 2255 motion is deemed filed as of the date the prisoner delivers it to prison officials. *See Houston v. Lack*, 487 U.S. 266, 270-71 (1988); *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735-36 (4th Cir. 1991). Harris executed the Section 2255 motion on April 23, 2009, and the Court presumes that he delivered it to prison authorities for mailing that same day. Since there is a one-year limitation period, Harris's Section 2255 motion is timely.

Analysis

In order to gain relief under 28 U.S.C. § 2255, a petitioner must "clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). A federal district court is authorized to grant relief only if it determines that the challenged sentence resulted from a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962).

All three of Harris's claims are premised on arguments that his attorneys provided constitutionally ineffective assistance. The standard applicable to claims of ineffective assistance of counsel is that required by *Strickland v. Washington*, 466 U.S. 668 (1984), and *Hill v. Lockhart*, 474 U.S. 52 (1985). In *Strickland*, the Supreme Court established a two-prong test for determining whether the assistance of counsel was so deficient as to require reversal of a conviction. First, petitioner must establish that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. 466 U.S. at 687-88. Second, he must establish that the deficient performance of counsel prejudiced the defense to the extent that he was deprived of a fair trial. He must establish that there is "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceedings would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In making that determination, the court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Generally, the defendant must overcome the presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Harris bears the burden of showing prejudice. *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991) ("This is no insubstantial burden . . . ."). The two parts of the test are sometimes referred to as the "performance prong" and the "prejudice prong." *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992). Generally, unless a petitioner successfully bears the burden of proving the prejudice prong, a court need not consider the performance prong. *Id.*

In certain contexts, however, prejudice may be presumed. "Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." *Strickland*, 466 U.S. at 692. Another type of claim – "when counsel is burdened by an actual conflict of interest" – warrants a "similar, though more limited, presumption of prejudice." *Id.* "Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)).

Harris makes three separate claims that his attorneys were ineffective, and all three claims

are based on his allegation that a conflict of interest within the Office of the Federal Public Defender tainted both attorneys' representation of Harris. Harris's first claim is that his first counsel, Robert J. Wagner, was ineffective for failing to file a motion to dismiss the indictment because it was not filed within thirty days of Harris's arrest, in violation of 18 U.S.C. § 3161(b). Harris alleges that Wagner was aware that Harris had not been indicted within thirty days after his arrest, in violation of 18 U.S.C. § 3161(b), but failed to file a motion to dismiss the charges because, Harris alleges, Wagner was representing the informant that caused Harris's arrest and so wanted Harris to remain in jail. This claim raises three issues: (1) a violation of the Speedy Trial Act; (2) ineffective assistance by failing to move for dismissal on those grounds; and (3) a conflict of interest in Wagner's representation of Harris.

The first issue, an alleged violation of the Speedy Trial Act ("Act"), is based on 18 U.S.C. § 3161(b), which states in pertinent part: "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date which such individual was arrested . . . in connection with such charges." This part of Harris's claim fails for several reasons. First, although he may have been arrested more than thirty days prior to being indicted, he was arrested on a different charge than those for which he was indicted. He was arrested on a criminal complaint that charged him with possession with the intent to distribute in excess of five grams of cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1). He was later indicted in a three-count indictment that charged him as follows: Count One charged Conspiracy to Possess with the Intent to Distribute more than Fifty Grams of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and 846; Count Two charged Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A); and Count Three charged Possession

of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1). A defendant's arrest only triggers the running of the Speedy Trial Act's thirty-day indictment clock as to the offense for which the defendant was arrested. *United States v. Leftenant*, 341 F.3d 338, 343 (4th Cir. 2003). Further, the Act "does not limit the Government's ability to charge a defendant with offenses unrelated to the charge underlying his arrest." *Id.* Harris was indicted on three offenses, all different from the original charge in the criminal complaint. In addition, as the Fourth Circuit noted, Section 3161(b) "does not require that an indictment be returned within thirty *calendar* days of arrest. Instead, it requires that an indictment, in order to be considered timely, be returned within thirty *nonexcludable* days." *Id.* at 344. Days that may be excluded in calculating the time include "any period of delay resulting from other proceedings concerning the defendant." The period during which the government and a defendant engage in plea negotiations are *excludable* days. *Id.* at 344-45. As both Wagner's and Dinkin's affidavits show, Harris was in plea negotiations during the period following his arrest until the time he was indicted. Since this time period is excludable, there was no Speedy Trial Act violation.[3] Since there was no Speedy Trial Act violation, Wagner was not ineffective for failing to file a motion to dismiss on those grounds.[4] Harris has not shown that counsel's actions

---

[3] Harris filed a request that the "attorney-client privilege be honored by both counsel," apparently seeking to prevent his former attorneys from submitting affidavits in this case. As the government correctly notes, because Harris has alleged that both his former attorneys, Wagner and Dinkin, provided ineffective assistance of counsel, he has waived any attorney-client privilege as it pertains to these attorneys. *See Tasby v. United States*, 504 F.2d 332, 336 (8th Cir. 1974), *cert. denied*, 419 U.S. 1125 (1975). *See also Turner v. Williams*, 812 F. Supp. 1400, 1433 (E.D. Va. 1993).

[4] Also, Dinkin investigated whether there was a Speedy Trial Act violation and concluded that there was not. Further, a Speedy Trial Act violation must generally be raised prior to trial or prior to the entry of a guilty plea, otherwise the defendant is deemed to have waived the alleged violation. *See United States v. Satterfield*, 254 Fed. Appx. 947, *1 (4th Cir. 2007), 2007 WL 3302089 (unpublished) (citing *Zedner v. United States*, 547 U.S. 489, 502

fell below an objective standard of reasonableness. This claim is without merit and will be denied.

Next, Harris alleges that there was a conflict of interest that affected both Wagner and Dinkin. He alleges that after Wagner withdrew as counsel, his second counsel, Dinkin, continued to receive advice from Wagner and that said advice sabotaged the defense because Wagner was representing the informant who had caused Harris's arrest. As both attorneys' affidavits show, this claim is completely without any factual basis. Wagner withdrew as soon as the potential conflict was identified and never took any action because of the potential conflict, except to file the motion to withdraw. Dinkin states that to his knowledge, there was no conspiracy between Wagner and the prosecutor. He also states that Harris never raised such a suspicion with him and that he had "absolutely no evidence" that Wagner funneled any of Harris's confidential information to the government's informant or that Wagner or the government otherwise acted improperly in this case. Dinkin states that there was no basis for filing a motion regarding prosecutorial misconduct. In addition, Harris signed a plea agreement in which he states that he was satisfied that his attorney had rendered effective assistance. Harris has not shown that either counsel's actions were affected by the conflict of interest that caused Wagner to withdraw, and he has not shown that either counsel's actions fell below an objective standard of reasonableness. This claim has no merit as to either attorney and will be denied.

Next, Harris argues that Dinkin was ineffective for failing to argue prosecutorial misconduct. Harris seems to be arguing that Dinkin tried to conceal that the informant who caused Harris's arrest "was represented by both the United States and Wagner during numerous proceedings" and that after Wagner was appointed as Harris's counsel he "continued to represent Mr. Harris and the informant

---

(2006)).

who had Mr. Harris arrested so that he would be able to share Mr. Harris['s] confidential information with such informant who then relayed such information to the United States Attorney's Office." Harris concludes by alleging that this compromised his defense and "amounted to prosecutorial misconduct" and that Dinkin "was ineffective for not filing for dismissal" on these grounds. As noted previously, Dinkin states that he saw no basis for filing a motion regarding prosecutorial misconduct. As such, he cannot be ineffective for not filing this alleged claim of misconduct. Harris has produced no evidence of a conflict or any other improper actions on the part of Wagner or Dinkin or the prosecutor. Harris has failed to show that counsel's actions fell below an objective standard of reasonableness. This claim is without merit and will be denied.

For the foregoing reasons, all of petitioner's claims are without merit, and petitioner's motion to vacate, set aside, or correct sentence pursuant to § 2255 will be denied.

An appropriate Final Order shall issue.


December 16, 2009　　　　　　　　　　　　/s/
DATE　　　　　　　　　　RICHARD L. WILLIAMS
　　　　　　　　　　　　SENIOR UNITED STATES DISTRICT JUDGE